COATES <em>v.</em> JONES <em>et al.</em>

ATKINSON, J. The exception is to a judgment dismissing the petition on general demurrer. As amended the petition alleged the following in substance: On January 18, 1894, the plaintiff owned described land which she conveyed to a building and loan association as security for a loan. A bond for title was given, providing for a reconveyance of the property on payment of the debt. On January 18, 1896, a general judg-

ment for $950.88 and costs was recovered as the amount due on the loan, and the judgment also declared a special lien on the property. An execution was issued January 31, 1896, .on which an entry of levy on the land was made February 1, 1896. On the day before the entry of levy the loan association signed a deed reconveying the land to the defendant in fi. fa., in order that the land might be sold to pay the judgment. Though so signed, the deed of reconveyance was not in fact filed or recorded in the office of the clerk of the superior court before the levy; it was filed and recorded about two years later; but in the meantime the sheriff, on March 6, 1896, sold the property under the execution to the plaintiff in fi. fa., executed a deed, and, in pursuance of the deed, put the purchaser in possession. The defendant, being advised that the sale was void, and that no title passed because of the failure of the holder of the security deed to cause to be filed and recorded the deed of reconveyance before the levy, "permitted" the purchaser to remain in possession "only for the purpose of applying the rents, issues, and profits thereof to the extinguishment" of the debt. A receiver was appointed for the loan association; and subsequently the receiver occupied the land from the date of the sheriff's sale until February 19, 1901, when the receiver sold the land to the defendant, J. A. Jones, and, at the instance of Jones, executed a deed to a third person who advanced the purchase-money. Jones entered into possession, and remained until suit was filed in 1911. In the meantime he had reimbursed the third person who had paid the purchase-money to the receiver, and received a deed from such person. At the time of the purchase from the receiver, Jones, as well as the person advancing the purchase-money for him, had notice of the plaintiff's equity in the land. Through her agent she informed Jones, at the time he took possession, that a good title could not be made to him, because plaintiff had an equity in the property and a right to redeem it. Then, and from time to time afterwards, and as late as 1907, Jones informed plaintiff's agent that he had not bought the land but was only renting the premises; and on account of such conduct upon the part of Jones the plaintiff did not move sooner to assert her rights. Other allegations were that the rents, issues, and profits from the premises, of the value of $180 per year, had fully paid the debt, with interest, but if upon an accounting it should be ascertained that plaintiff is due any sum to the defendant, she is willing and stands ready to pay the same. The statements and conduct of Jones, relatively to the right by which he was in possession, were fraudulently made with a purpose and with the effect of deceiving plaintiff and preventing her from sooner asserting her rights; and because of such conduct Jones is estopped from claiming a prescriptive title or laches against petitioner. The prayers were: (*a*) that the sheriff's sale and deed made in pursuance thereof be canceled; (*b*) that there be an accounting between the parties; (*c*) that title to the land be decreed to be in plaintiff, and that such other relief be granted as may be necessary to an adjustment of the rights and equities between the parties. *Held:*

1. If the building and loan association had reduced its claim to judgment, and had duly signed a quitclaim deed conveying the property to the defendant in fi. fa., and had caused the deed to be filed and recorded in

the office of the clerk of the superior court, the land could have been levied on and sold under the execution. Civil Code, § 6037.. But, although such a judgment may have been rendered and the deed so signed, the land could not be levied on by virtue of the execution based on the judgment before the deed was filed and recorded in the office of the clerk of the superior court. A sale of the property under a levy made under such circumstances would be absolutely void. *National Bank of Athens* v. *Danforth*, 80 *Ga.* 56 (6), 69 (7 S. E. 546); *Dedge* v. *Bennett*, 138 *Ga.* 787 (76 S. E. 52).

(a) Possession of the loan association acquired by virtue of such void sale by the sheriff would give the loan company no more right in the property than if it had taken possession under the security deed on account of default in payment of the debt. *Ashley* v. *Cook*, 109 *Ga.* 653 (35 S. E. 89).

(b) Under the circumstances indicated in the preceding notes, the maker of the security deed could maintain an equitable petition to have the sheriff's sale and deed set aside, and to recover possession, without tender of the amount of the debt. *Benedict* v. *Gammon Theological Seminary*, 122 *Ga.* 412 (50 S. E. 162). And if the rents, issues, and profits derived from the property by the purchaser at the void sale were sufficient to pay the debt, the maker of the security deed could maintain an action also to recover the property, unclouded by the security deed. *Marshall* v. *Pierce*, 136 *Ga.* 543 (71 S. E. 893); *Culver* v. *Lambert*, 132 *Ga.* 296 (2), 298 (64 S. E. 82).

(c) A purchaser from the loan association, with notice of the equity of the maker of the security deed, would have no better standing, relatively to such equity, than the loan association.

2. Whether the petition showed on its face that a prescriptive title had ripened in favor of the loan association or those claiming under it, including the defendant, or whether an equitable bar had arisen in their favor against the plaintiff on account of laches, and whether the defendant would be estopped from setting up certain time as creating a prescriptive period (if otherwise prescription would have ripened), or whether an equitable bar had arisen, are questions also to be decided. To these questions the following rulings apply:

(a) The sheriff's sale, being void, would not, as a matter of law, destroy the obligation of the loan association, existing by virtue of the stipulations in the bond for title, to reconvey to the grantor named in the deed.

(b) Notwithstanding the void sale, the loan association would continue to be the holder of the legal title to the land, and to be bound to reconvey the property, upon payment of the debt, as provided in the bond. In view of such obligation, possession by the loan association, acquired under the void sheriff's sale, would not be opposed to the bond for title, or constitute such adverse possession to the obligee in the bond as would afford a basis for prescription. See, in this connection, *Jay* v. *Whelchel*, 78 *Ga.* 786 (3 S. E. 906); *Buchan* v. *Williamson*, 131 *Ga.* 501 (62 S. E. 815). The ruling here announced is not in conflict with the ruling announced in the last note to the case of *Benedict* v. *Gammon Theological Seminary*, supra, based on different facts. In that case an equitable petition was filed for the purpose of setting aside a sheriff's sale and a deed made thereunder, alleged to be void. It was not an effort to re-

cover land on one side, with a claim of prescription on the other; but one question was whether the suit was barred either by the statutory limitation or by laches of the plaintiffs. In discussing the question of laches, reference was made to the length of time which might suffice to show laches; and it was held in effect that there was no laches and no bar apparent, whichever test might be applied. Moreover it does not appear that there was any bond for title existing or any claim set up under its obligation, nor was any such question discussed.

(c) If the defendant entered into possession as a mere tenant of the loan association, his possession would count as that of the association, and would not afford him a basis for prescription. If he entered as owner, but for the purpose of deceiving and lulling the maker of the security deed into a state of quiescence, and to delay the assertion of her legal rights he falsely represented to her that his possession was merely as a tenant of the loan association, and by reason of such false statements deceived and induced her so to delay, relatively to him the delay would be excusable, and such conduct upon his part would estop him from asserting that the time in which the maker of the security deed was so deceived should be counted in computing any prescriptive period in his favor against her, if prescription would otherwise ripen.

(d) It does not appear that the debtor received her note on any balance arising from the sheriff's sale; and no ruling is made on the basis of possible facts not now appearing.

3. It was erroneous to dismiss the petition on general demurrer.

*Judgment reversed. All the Justices concur.*

AUGUST 18, 1914.

Equitable petition. Before Judge James B. Park. Hancock superior court. March 26, 1913.

*Sibley & Sibley* and *Samuel H. Sibley,* for plaintiff.

*Allen & Pottle, R. L. Merritt,* and *Dorsey, Brewster, Howell & Heyman,* for defendants.